UNITED STATES DISTRICT COURT *original*

SOUTHERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA

VERSUS

ETHAN PHELAN MELZER

CASE NO: 1:20-cr-314-GHW

## MOTION TO REDUCE SENTENCE

**NOW INTO COURT** comes Ethan Phelan Melzer, in pro se, who respectfully moves this court pursuant to 28 USC § 2255. Mr. Melzer was sentenced by this court to a sentence in excess of 40 years for attempt to commit murder, gathering, transmitting, or losing defense information, and providing material support to terrorists. The following enumerated grounds will show that Mr. Melzer is entitled to be resentenced.

1.

This judgment was brought before the United States Court of Appeals for the Second Circuit in case number 23:-6247-cr and ruled on November 12, 2024. The appeal was on the grounds of a violation of Mr. Melzer's religious rights in that this Court wrongfully admitted Mr. Melzer's religious beliefs as an aggravating factor at sentencing. Such admission was ruled not to be a violation and the Appeals Court upheld both the judgment and the sentence.

2.

Certiorari was not sought in this matter. The judgment of the United States Court of Appeals on November 12, 2024 set the one year filing deadline for this motion to November 12, 2025.

3.

This is the first collateral attack of the sentence under 28 USC § 2255.

4.

### GROUND ONE

During sentencing, this Court failed to take into account Mr. Melzer's youthful offender status, which wrongfully resulted in a far higher sentence than necessary.

1 of 5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

At the time of sentencing, Mr. Melzer was twenty one years old and an infantryman in the United States Army. His young age was cognizable under the United States Sentencing Guidelines and the Court wrongfully ailed to apply this safeguard.

Ground one was not raised on appeal as this ground is not plain error in the record. Therefore the Appeals Court was without jurisdiction to hear the matter. This is the de novo raising of this ground before a Court.

5.

## GROUND TWO

Mr. Melzer's character of service was recognizable under the United States Sentencing Guidelines. The Court failed to take this factor into account during sentencing and resulted in a far more severe sentence than Mr. Melzer would have received. Mr. Melzer, even though he was only twenty one at the offense, had already been stationed at Fort Benning, Georgia, Italy, Germany, and Croatia. Such constant stress and travel created an extraordinary circumstance, warranted special consideration at sentencing. Due to Mr. Melzer's atypical hardship, he should have received leniency at sentencing because he was acting far from his normally moral character.

This ground was not raised on direct appeal because it is not plain error in the record and therefore not within the jurisdiction of the Appeals Court to hear. This is the de novo raising of this ground before a court.

6.

## GROUND THREE

Mr. Melzer's drug and alcohol addictions were recognizable under the United States Sentencing Guidelines but wrongfully omitted by the Court. At the timeofof the offense, Mr. MElzer was a severe alcoholic who was also abusing Dextromethorphan Hydrobromide, a mind-altering substance in many cough syrups. While coping with the already atypical hardship associated with his service, Mr. Melzer relied on nearly constant use of drugs and alcohol. This severe addiction played a major role in the offense. Had the Court taken this into consideration, Mr. Melzer would have received a far more lenient sentence.

2 of 5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

The sentence was unconstitutional in light of the 8th Amendment. The atypical severity of the sentence, combined with the Court's disregard of mitigating factors clearly show that the Court abused its discretion.

Such an abuse of discretion has left Mr. Melzer serving nearly a life sentence even though many mitigating factors qualified Mr. Melzer for a much shorter sentence. Though the Court was within the Statutorty authority with its sentence, its broad discretion was abused in fashioning its sentence in this case. When a Court fails to take into account the offender characteristics, it deviates from the Statutory obligation under 18 USC § 3553.

This ground was not raised in direct appeal because a similar but not exact claim was raised. Direct appeal challenged the inclusion of Mr. Melzer's religious beliefs (a cult that he was swept into as a teenager). The Appeals Court upheld the sentence. This ground is a similar but not exact ground that was discovered after the appeal, but within the due diligence timeline set by 28 USC § 2255. This is the de novo raising of this ground before a court.

10.

GROUND SEVEN

Mr. Melzer's sentence is above and beyond what is called for under 18 USC § 3553. Though the sentence is within the statutory limits for his offense, the sentenee fails when compated to the factoss set forth in 18 USC § 3553. This deviation from the statute shows that the Court abused its discretion and deviated from Congressional Intent. Such a sentence must be vacated.

This ground was not raised on direct appeal because it was not known at the time. This ground was discovered during the due diligence limits set forth in 28 USC § 2255. This is the de novo raising of this issue before a court.

11.

GROUND EIGHT

Prosecutorial Misconduct and wrongful admission of hear-say evidence. The government wrongfully admitted hearsay evidenceat sentencing which resulted in Mr. Melzer receiving a far harsher sentence than he would have.

4 of 5

UNITED STATES DISTRICT COURT

~~SOUTHERN~~ DISTRICT OF ~~NEW YORK~~ *Maryland*

The government introduced as evidence allegations that Mr. Melzer had shot someone, despite having no criminal history nor any showing that Mr. Melzer was ever charged with a firearms offense nor assualt, battery, or other violent crime consistent with shooting someone.
The government further wrongfully admitted into the record that Mr. Melzer's criminal history was under-represented. Both entries into the record should not have been accepted by the court. The Court relied on this evidence, though hearsay, to render a sentence far beyond was Mr. Melzer would have received.
This ground was not raised on direct appeal because it was not known at the time. This ground was discovered during the due diligence limits set forth in 28 USC § 2255. This is the de novo raising of this ground to a court.

Not only do the above factors warrant relief, but the sentence is further aggravated as unecessary because each sentence runs consecutively. This further shows the abuse of discretion on of the Court when it fashioned its sentence.
**THEREFORE,** this court should vacate Mr. Melzer's sentence. order that mitigation be redone, properly apply the United States Sentencing Guidelines reductions, and resentence Mr. Melzer to an appropriate sentence in accordance with the factors set forth in 18 USC § 3553.

Respectfully submitted this ____25th____ Day of ____October____ 2025,

Ethan Phelan Melzer 76447-054
Federal Correctional Institution
PO BOX 1000
Cumberland, MD 21501

### DECLARATION

I, Ethan Phelan Melzer, do declare under penalty of perjury as defined under United States law that the above and foregoing statements are true, to the best of my knowledge and ability this __25th__ Day of ____October____ 2025.

Ethan Phelan Melzer 76447-054
Federal Correctional Institution
PO BOX 1000
Cumberland, MD 21501

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ~~NEW YORK~~ ~~ACKNOWLEDGED~~

UNITED STATES OF AMERICA

VERSUS

ETHAN PHELAN MELZER

CASE NUMBER: 1:20-cr-314-GHW

MEMORANDUM OF LAW ACCOMPANYING 28 USC § 2255 MOTION

The following memorandum of law will outline authorities ground by ground, as listed in the motion.

GROUND ONE

United States Sentencing Guidelines 5H1.1 applies to youthful offenders. This should have been applied to Mr. Melzer. The factors taken into account in 5H1.1 are limited not only to age, but also living environment, adverse experiences, substance abuse, and education. As a twenty one year old offender who was serving in the Army, Mr. Melzer qualified for almost every factor taken into account under 5H1.1.

GROUND TWO

Mr. Melzer's fast-paced service qualified him for 5H1.3 for his clear mental and emotional conditions, and 5H1.11 for his military service. Such factors were wrongfully omitted at sen sentencing which greatly increased Mr. Melzer's sentence. As Mr. Melzer's career=was fast paced, he was not acting in his normal state of mind due to the immense stress of being an infantryman on foreign soil. Such conditions would make any reasonable and prudent person struggle to maintain a healthy lifestyle. Mr. Melzer's service was also during the almost complete Covid-19 lockdown of Italy.

GROUND THREE

Mr. Melzer's severe alcohol and drug abuse should have been taken into account under 5H1.4. Alcoholism is a plague for nearly all service members of the Armed Forces across all branches. Mr.=Melzer was abusing not only alcohol on a daily basis, but also Dextromethorphan Hydrobromide, which is a mind altering substance. His drug and alcohol addiction directly influenced his actions and led him to the poor decision making which led to his crime. While many chains of command monitor their soldiers for drug and alcohol addiction, his stood by and watched him descend into abuse.

1 of 5

UNITED STATES DISTRICT COURT

~~SOUTHERN~~ DISTRICT OF ~~NEW YORK~~ MARYLAND

GROUND FOUR

Mr. Melzer was subjected to a clearly unconstitutional sentence that is well within the meaning of a sentence disparity.

Mr. Melzer is not only the only person in his case that was indicted at all, but he received a sentence greater than many others who were charged with similar crimes.

Mr. Melzer's crime did not result in death, yet he received more time than those who committed murders. These cases are clear evidence of the extreme sentence disparity in this matter. Even though Mr. Melzer's Pre-Sentence Investigation Report recommended a sentence of 25 years, this Court nearly doubled that time and created a clear sentence disparity which warrants relief.

- United States v. Moreno, 3:94-cr-00223, heard in 2025, outlines three offenders:
- Michael Armstrong who received 270 months for Murder, Angel Torres who received 120 months for Conspiracy to Commit Murder, and Jorge Rivera who received 120 months for Conspiracy to Murder and 120 months for Attempted Murder.

- United States v. Gennaro Bruno, 14-cr-556 (WFK)(2016), defendant received 252 months for Conspiracy to Murder.
- United States v. Demitrio Hernandez, 15-cv-10093, 98-cr-00968 (2025), defendant received 396 months for Conspiracy to Murder in a Racketeering case.
- United States v. Gary JAckson, 01-cr-450-6, 2024 US Dist. LEXIS 215425, defendant received 120 months for Conspiracy to Murder in a Racketeering case.
- Agron Hasbajrami 1:11-cr-623, received 180 months for Material Support to Terrorists.
- Tairod Nathan Webster Pugh, 935 F.3d 9, 180 months for Material Support to Terrorists.
- Betim Kaziu, 1:09-cr-00660, received 27 years with life supervised release for Conspiracy to Murder and Material Support to Terrorists.
- Ali Saleh, 18-cr-468, 2021 US Dist. LEXIS 227003, 100 months for Material Support to Terrorists.

These cases out of the Southern District of New York are only some of the highlights of the previous judgments that create a disparity that warrants relief.

2 of 5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK MARYLAND

## GROUND FIVE

The Federal Bureau of Prisons operates a Communications Management Unit.in Cumberland, MD and the unit is operated by the Intelligence and Counter-Terrorism Branch. The unit is monitored in real time on a constant basis by audio and visual surveillance.

Such environment guarantees complete monitoring and extensive inmate notes are taken. Through all of the surveillance and constant monitoring over the years that Mr. Melzer has been been in the unit, he has maintained a completely clear record and has matured to an almost entirely new person. He has abandoned his ties to the former group listed in his case and is being considered for the step-down process to graduate him out of this unit. His mentality has changed and the evidence is clearly documented with ICTB records. Due to these circumstances, the Court is well within its authority to re-sentence Mr. Melzer for this extraordinary and compelling reason. Mr. Melzer's PSIR reflected that a sent sentence of 25 years would have been sufficient, yet the characteristics of this defendant presented here in the numerous grounds make even that sentence excessive.

## GROUND SEVEN

18 USC § 3553 factors:

The first factor considered is NAture and circumstances of the offense along with history and characteristics of the defendant.

Under this section, the grounds enumerated in one,ftwot and three of this motion should have been given strong weight in fashioning the sentence. The Court's disregard for these resulted in a sentence far harsher than necessary to meet the 18 USC § 3553 factors and therefore deviated from the statutory intention. When a judge deviates from the intention of the sentencing statute, the sentence lacks the proper authority to be imposed.  Such sentence should then be invalidated because it is outside of the scope put in place by Congress.

§ 3553 (2) itemizes the individual facts needing to be taken into account. They are:
(A) Reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

3 of 5

UNITED STATES DISTRICT COURT

SOUTHERN~ DISTRICT OF ~NEW YORK~ MARYLAND

Under section (2)(A), the Court imposed a sentence far beyond what the statute intended. The offense itself resulted in no deaths and even if the attack couldshaveshappened, the result would have been a bushel of dead enemies. The sentence imposed went far above what wsa necessary to feflect the seriousness of the offense, Any sentence of over ten years w would have been sufficient to promote respect for the law and to provide just punishment.


(B) Afford adequate deterrence to criminal conduct.

Under (2)(B), the sentence went far beyond what was heeessary to deter similar crimes from happening. However, the nature of this particular offense is of the character that even a sentence of death would have been unable to deter future actors from committing. No matter · what happens to one defendant, someone who is engaging in espionage, treason, or other like conduct will carry out their actions regardless of the possible consequences. As the same actions have been around for centuries and always will be, (2)(B)|sastatutory intention fails on its face. In this matter, any sentence under a criminal statute would be sufficient to deter other service members from engaging in this exact conduct.


(C) Protect the public from future crimes of the defendant.


(2)(C) is a factor that if taken into consideration, would have resulted in a far lesser sentence. Mr. Melzer was not the kind of person who has a history of these offenses nor would he have continued to offend in this manner once he realized the seriousness and gravity of his actions. The arrest itself deterred any future crimes that Mr. Melzer would have been able to commit. The sentence itself wentnabove and beyond what was necessary to achieve the goal of this statutory factor.


(D) Provide needed education or vocational training, medical care, and correctional treatment.


(2)(D) played no role in the sentencing of Mr. Melzer. He did not need to be incarcerated in order to get educated or learn a trade. He was already educated and attended Job Corps where he earned heavy machinery certifications.

4 of 5

UNITED STATES DISTRICT COURT

~~SOUTHERN~~ DISTRICT OF ~~NEW YORK~~ /WACKYUANWD

Mr. Melzer was not in any need of medical care nor was he in need of correctional treatment. The arrest in this matter was all the correctional treatment that he needed in order to satisfy all of the 18 USC § 3553 factors.

To send the man to prison for any factor under (2)(D) directly results in an arbitrary and capricious sentence. The Court can not demonstrate any need under (2)(D), yet they imposed an extreme sentence.-

The Court's deviation from 18 USC § 3553 and the factors enumerated therein by Congress is enough to warrant resentencing. The sentence was far greater than necessary to achieve the factors and Mr. Melzer's fourty three year absence is entirely unecessary. The sentence imposed is unconstituional, is disproportionate to the similary situated offenders who receive far less time for worse crimes, created a sentence disparity within the Southern District of New York, and failed to take in several factors under the United States Sentencing Guidelines. Not even the PRe-Sentence Report was followed.

THEREFORE, this sentence must be redone to conform to the Laws of the United States and the United States Sentencing Guidelines.

Respectfully Submitted, this __25th__ Day of __October__ 2025.

_(signature)_

Ethan Phelan Melzer 76447-054
Federal Correctional Institution
PO BOX 1000
Cumberland, MD 21501

**DECLARATION**

I, Ethan Melzer, do declare under penalty of perjury as defined under United States Law, that the above and foregoing statements are true, to the best of my knowledge and ability, this __25th__ Day of __October__ 2025.

_(signature)_

Ethan Phelan Melzer 76447-054
Federal Correctional Institution
PO BOX 1000
Cumberland, MD 21501

5 of 5.

1:20-cr-314-GHW

UNITED STATES DISTRICT COURT

~~SOUTHERN~~ DISTRICT OF ~~NEW YORK~~ MARYLAND

Statement in Support of Ethan Melzer

Your honor,

Thank you for allowing me to address your Court. My name is Ryan Taylor and I am writing on behalf of my friend, Ethan Melzer.

The charge that he is currently serving time for is unquestionably heinous. Yet, so was the punishment given to Ethan. I've known him for over roughly a year and a half now and have been extremely close to him for most of it. I've been to two institutions with Ethan in the last year. As there are only roughly 30 inmates incarcerated in our side of the Bureau of Prisons' Communications Management Unit, we are well acquainted. So much so that when we moved to Cumberland, Maryland, and were required to double bunk, I took him as a cell mate.

As a former Infantry team leader with two combat deployments to Afghanistan, the sort of charges that he has should boil my blood. However, after reviewing a lot of his case material and talking with him for hundreds of hours, I am not the least bit convinced that he committed his crime with the direct intent to harm others.

It is true that the material he was discussing in his immature fantasy could be detrimental to combat operations overseas, but it is also true that it was only an immature fantasy. An immature fantasy of a lonely, over-worked, over-stressed infantryman who turned to drugs and alcohol. I am thoroughly convinced that if Ethan had the leadership to support him and get him treatment, he would not have been in his situation. A proper chain of command would have assured that Ethan got the help that he needed, rather than encouraged his constant drinking.

These bad habits combined with the almost total lockdown of Italy during Covid-19 created the trifecta of a career ender. As any infantryman, Ethan had been trained to take on the enemies of the United States in close combat. The Covid-19 pandemic ceased all operations and turned his whole unit into barracks dwellers. Such lifestyle is absolutely toxic to the morale of a trained warfighter. This already toxic system, combined with drugs, alcohol, and seemingly absentee leadership is enough to drive even the most reasonable and prudent man to madness.

Through online chat rooms where people mentally act out their darkest desires, carry on the darkest of conversations, and share politically incorrect humor, many people fabricate ideology that they would never act on. Ethan was no different than any other person in the chat room, he just spoke more in detail because of his background and current occupation.

Looking back at the offense, even if Ethan had organized a group of terrorists to attack a US base, the result would not have been anywhere near what he had been charged with. His platoon would not have been killed, his base would not have been overrun, nor would there have been any detriment to National Security. Such an attack would have been easily repelled, leaving many dead insurgents. No matter how planned or coordinated an insurgency, they would not have been able to do any damage even close to what Ethan has been charged with.

I know what it's like to have insurgents try to overrun your base. In the Khyber Pass of Afghanistan, we had well trained and well armed insurgents try to overrun Fire Base Torkham on two occasions. Their complex attacks were snuffed out within hours, leaving all the insurgents dead. Between the rockets, mortars, and insurgents firing wildly at us, we were still not in a high level of danger.

In Kandahar, Afghanistan, we had another team of insurgents try to overrun Camp Simmons and Kandahar Airfield. Their attack was repelled within hours, leaving all of the insurgents dead. The insurgents outnumbered our force at Camp Simmons and we still left them lying in the drive way, all over the desert, and in the bazaar.

In Helmand, Afghanistan, we were outnumbered and the insurgents had four-barrel 20mm anti-aircraft guns known as ZPUs. They employed all sorts of small arms, RPGs, light machine guns, and even a 500 pound vehicle-borne improvised explosive device (VBIED). Even then, we prevailed in their villages, across their lands, and on their highways.

A small insurgent force in the nation of Turkiye would have been less than a problem. Even if they had the entire base mapped out, they still do not have the ability to take on a unit of disgruntled, blood thirsty warfighters who reside there. In fantasy, the idea may play out well, and that's where the idea stayed - fantasy land on the internet.

1 of 3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK MARYLAND

Ethan was also the only person charged in his indictment. Out of everyone who was involved in the chat, even those who allegedly received national defense information, are still out there and faced no legal consequences. As this is the Southern District of New York, the Court knows as well as I do that if there was a force out there who possessed sensitive information on a key US base, they would be wrapped up by the omnipotent JTTF who stand ready to take on the worst enemies that the US will ever face. Such was not the case. They nailed the one guy who would plea guilty and let everyone else involved go. This clearly shows that this problem was not a major threat.

Throughout my years in the Army, I served with the 10th Mountain Division at Fort Polk, Louisiana and overseas, 7th Special Forces Group overseas, 19th Special Forces Group overseas, the 509th Infantry at Fort Polk, Louisiana, and two military police companies of the 519th Military Police Battalion at Fort Polk, Louisiana. I have worked along side US Customs and Border Protection in the Khyber Pass of Afghanistan and hold several certifications from them. I have served in Afghanistan twice, Pakistan, and have been to Kuwait, Kyrgyzstan, Romania, and Germany. In the four years and ten months of my service, I earned 18 awards, three of which were for my actions under enemy fire.

If Ethan's actions can be overlooked by a hardened warfighter, the actions should be overlooked by those who have not donned the uniform and answered the call to arms. I am one of the few folks in the United States who have to bear the scars of combat, the mental and emotional tolls of what went on over there, and was lucky enough to come back from it all.

Many of the folks who persecute Ethan based solely on his charges have not earned the right to do so, nor have they earned their self-imposed sense of patriotism that they use to blindly do so. These so-called patriots have not answered the call to duty and are, in my opinion, a bunch of sunshine patriots who showed up for the persecution phase of a bad situation. They fluffed their feathers, used their uniforms to boost their esteem before the Court during sentencing, but have not put in the work to actually earn the title of patriot. They know not the perils of war, yet they don the cloak of righteousness at the first opportunity.

It is my honest opinion that the only people who have a right to be legitimately mad at Ethan are those of us who have actually taken up arms for this Nation, went into combat for this Nation, and have permanently seared the high espirit de corps of the United States Armed Forces into our souls. Unless someone has been baptized in the fires of combat, they cannot fully comprehend the gravity of such actions that lead to such charges, let alone speak as to what he should be sentenced to. It is because of this, in my opinion, that Ethan received so much time in the first place. The sunshine patriots showed up, hucked horrible "facts" in their victim impact statement, yet they don't realize that they were never in any real danger. The charge itself sounds so heinous that it inspired moral indignation among the masses and turned into a scene straight from the film "Lord of the Flies".

A kid in the unit messed up and people clung to their definitions, hopped onto the endless bandwagon of post-incident righteousness, and because of their moral indignation they threw him to the system. Instead of a Court Martial or proper military punishment for crimes under the UCMJ, he stood accountable for his actions before a civilian Court. A Grand Jury, Court, and prosecutors who do not fully grasp the full reality of the situation while clinging to laws named after offenses that rouse ire, hatred, and moral indignation to those charged with them.

Ethan has the utmost remorse for his actions and fully understands why those specific laws are in place, he has stepped entirely out of the organization that led him to his unhealthy way of life, and has put in undying effort to become a new person. In the last few years, he's come across many men who have lived their lives in prison, who have steered him away from his former idiocy. He's been able to see the importance of integrity, a code of honor, and the reason to respect the rule of law.

As a misguided youth, he got into the organization seeking acceptance and a sense of belonging. He was vulnerable, impressionable, and literally led into a cult. Years later, he's tossed into prison for almost the rest of his life for a situation that should not have happened.

When Ethan joined the military, he should have been provided with what we refer to as the mantle of leadership. He should have been coached, counseled, guided, and mentored into becoming one of the Nation's best. Instead, he was sent to Italy, Germany, and Croatia. He served under a chain of command that had almost no deployment history which led to the entire unit losing sight of why they are serving. No deployments, base on lockdown, drugs, alcohol, and online tom-foolery created this situation. It is that specific pattern of irresponsibility, recklessness, and immaturity that led Ethan onto this path. A path which he has steered clear of.

Believe me when I say this, Ethan was a drugged out alcoholic kid in a terrible unit. He was in a very dark place in his life and the kid that was sentenced to 43 years in prison is not the same man that is sitting with me here. Until talking thoroughly with me about his unit, he didn't even realize that he had toxic leadership, major standards were not in place, and did not learn half of what a new soldier is supposed to learn. I'm convinced that he learned more from me in prison from having to deal with my

2 of 3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ~~NEW YORK~~ MARYLAND

PTSD driven rants than he learned from his whole chain of command.

If I can forgive this situation, so should the Court. There's no reason that Ethan should continue to bear a 43 year burden for actions that took place in such a short time, during one of the worst times of his life.

Thank you for your time in this matter. I hope that my direct insight helps the Court fashion a far more appropriate sentence for this young man. Even a sentence of 20 years would be more than sufficient to achieve the 18 USC 3553 factors.

Respectfully,

Ryan Taylor 20301-035
FCI Cumberland CMU
PO BOX 1000
Cumberland, MD 21501

## DECLARATION

I, Ryan Taylor, do declare under penalty of perjury as defined under United States Law that the above and foregoing statements are true, to the best of my knowledge and ability this 11th Day of September 2025.

Ryan Taylor 20301-035
FCI Cumberland CMU
PO BOX 1000
Cumberland, MD 21501

3 of 3

UNITED STATES DISTRICT COURT

~~SOUTHERN~~ DISTRICT OF ~~NEW YORK~~

Clerk of Court,

Please find enclosed Ethan Melzer's pro-se motion for reduction in sentence pursuant to 28 USC § 2255. It is accompanied by the required filing fee as well as a memorandum of law.

Respectfully submitted,

Ethan Phelan Melzer   76447-054
Federal Correctional Institution
PO BOX 1000
Cumberland, MD 21501

2b442-054



# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### OFFICE OF THE CLERK

Catherine M. Stavlas, Clerk of Court
David E. Ciambruschini, Chief Deputy

Reply to Southern Division Address

December 2, 2025

Ethan Phelan Melzar
PO Box 1000
Cumberland, MD 21501

Re:     Case No. N/A

Dear Counsel/Party:

The Clerk received your Motion to Reduce Sentence and check on December 1, 2025; however, it is deficient in the area(s) checked below and is being returned to you, at the direction of the presiding judge.

**Noncompliance with L.R. 101 or 102**
☐   Member of bar has not signed the document.
☐   Business entities other than sole proprietorships must be represented by counsel.

**Noncompliance with L.R. 102 and FRCivP 5**
☐   Certificate of service not affixed to document.
☐   Certificate of service not dated and/or not signed.

**Noncompliance with L.R. 104 or 105**
☐   Discovery materials should not be filed unless in support of a motion or by court order.
☐   Discovery motion filed contrary to L.R. 104.7.
☐   Motion to compel filed contrary to L.R. 104.8.

**Miscellaneous**
☐   Document does not contain original signature.
☐   Document relates to more than one file. Original and appropriate copies are required for each file unless the cases have been consolidated for all purposes.
☐   Offer of judgment should not be filed with the Court until it has been accepted. Fed. R. Civ. P. 68.
☒   Other: The documents and case number are addressed to the United States District Court *Southern District of New York*. Please forward to the correct court.

Very truly yours,

J. Hendricks for

Northern Division • 4228 U.S. Courthouse • 101 W. Lombard Street • Baltimore, Maryland 21201• 410-962-2600
Southern Division • 200 U.S. Courthouse • 6500 Cherrywood Lane • Greenbelt, Maryland 20770 • 301-344-0660

Visit the U.S. District Court's Website at www.mdd.uscourts.gov

Ethan Phelan Melzer 76447-054
Federal Correctional Institution
Po Box 1000
Cumberland, MD 21501









RECEIVED
JAN - 5 2026
PRO SE OFFICE

USM P3 SDNY



RECEIVED
JAN - 5 2026
CLERK'S OFFICE
S.D.N.Y.

United States District Court
Southern District of New York
500 Pearl Street
Room 120
New York, NY 10007

⇔76447-054⇔
United States Court
500 Pearl ST
Room 120
NEW YORK, NY 10007
United States