UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

ETHAN PHELAN MELZER,

Defendant.

S1 20 Cr. 314 (GHW)

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE
DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255**

JAY CLAYTON
United States Attorney
Southern District of New York
*Attorney for the United States*
*of America*

Sam Adelsberg
Matthew J.C. Hellman
Kimberly J. Ravener
         Assistant United States Attorneys
         *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 2

    A.  THE OFFENSE AND INDICTMENT ................................................................. 2

       1.  Melzer's 09A Membership and Military Enlistment ......................................... 2

       2.  The Charged Conduct ..................................................................................... 3

    B.  GUILTY PLEA ............................................................................................. 5

    C.  SENTENCING ............................................................................................. 7

    D.  MELZER'S APPEAL...................................................................................... 8

    E.  THE PETITION ........................................................................................... 9

ARGUMENT ...................................................................................................... 10

    A.  MELZER'S § 2255 MOTION IS BARRED BY THE WAIVER IN HIS PLEA AGREEMENT 10

       1.  Applicable Law ............................................................................................. 10

       2.  Discussion .................................................................................................... 10

    B.  MELZER'S SENTENCE WAS PROCEDURALLY AND SUBSTANTIVELY REASONABLE. 12

       1.  Applicable Law ............................................................................................. 12

       2.  Discussion .................................................................................................... 14

         i. Melzer's Sentence Was Procedurally Reasonable ........................................... 14

        ii.  Melzer's Sentence Was Substantively Reasonable....................................... 17

CONCLUSION ................................................................................................... 20

## Table of Authorities

**Cases**

*Brady v. United States*, 397 U.S. 742 (1970) ................................................................. 10

*Gall v. United States*, 552 U.S. 38 (2007)...................................................................... 13

*Hernandez v. United State*s, No. 15-CV-10093, 2025 WL 1040635 (S.D.N.Y. Apr. 8, 2025) ..... 18

*Rita v. United States*, 551 U.S. 338 (2007) ................................................................... 13

*United States* v. *Kassir*, 04 Cr. 356 (JFK) (S.D.N.Y. Sept. 15, 2009).......................................... 17

*United States v. Arevalo*, 628 F.3d 93 (2d Cir. 2010)..................................................... 10

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) ................................................... 13

*United States v. Ceasar*, 10 F.4th 66 (2d Cir. 2021) ...................................................... 14

*United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978)..................................................... 16

*United States v. Fell*, 531 F.3d 197 (2d Cir. 2008).......................................................... 19

*United States v. Jabarah*, 292 F. App'x 140 (2d Cir. 2008) ........................................... 17

*United States v. Kaziu*, 768 F.Supp.3d 477 (E.D.N.Y., 2025)........................................ 17

*United States v. Kourani*, 6 F.4th 345 (2d Cir. 2021).................................................... 13

*United States v. Mumuni Saleh*, 946 F.3d 97 (2d Cir. 2019).......................................... 14

*United States v. Perez Dominguez,* 393 F. App'x 773 (2d Cir. 2010)............................ 16

*United States v. Pugh*, 945 F.3d 9 (2d Cir. 2019)......................................................... 13

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to the *pro se* petition of defendant Ethan Melzer ("Melzer") pursuant to Title 28, United States Code, Section 2255 (the "Petition" or "Pet."). Melzer seeks to collaterally attack his sentence, despite the fact that he was sentenced to a term of imprisonment consistent with the U.S. Sentencing Guidelines, after he expressly waived his right to challenge a sentence within that Guidelines range as part of his plea agreement. In service of his argument, Melzer claims that the Court failed to consider mitigating factors at sentencing, complains that the Court considered facts set forth in his Pre-Sentence Report (to which he did not object), alleges unspecified prosecutorial misconduct against him, and claims that his sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment, among other things.

Melzer's Petition should be denied. Melzer knowingly, intelligently, and voluntarily waived his right to collaterally attack his sentence. There is no basis to find this waiver unenforceable. Nor can Melzer identify any procedural error or abuse of discretion in his sentencing. Melzer was a private in the U.S. Army who viciously plotted to murder his fellow servicemembers, provided material support to terrorists, and illegally transmitted classified information to co-conspirators in furtherance of his deadly plot. The record clearly demonstrates that the Court imposed sentence based on careful reasoning and attention to the Section 3553(a) factors, including the same mitigating factors now recited by Melzer. The Court rightfully imposed a Guidelines sentence, based on the extreme nature of Melzer's offenses, the need for deterrence, and the need to promote respect of the law. Melzer's Petition is meritless, and should be denied in its entirety.

1

## BACKGROUND

### A.  The Offense and Indictment

From in or about April 2019 to May 2020, Melzer participated in, and attempted to use his position in the U.S. Army to further, the aims of an extremist group, the Order of the Nine Angles ("09A").  Melzer's actions included, among other things, providing details on his unit's location and missions to 09A associates and individuals he believed to be members of Al Qaeda and related jihadist groups. Melzer intended that, using the information he provided, terrorists would ambush and kill the soldiers in Melzer's unit, during a mission to protect a sensitive overseas military base (the "Military Base").

On June 22, 2020, a grand jury sitting in this District indicted Melzer, and a superseding indictment was returned on August 18, 2020 charging Melzer in eight counts: (1) conspiracy to murder U.S. nationals outside the United States, in violation of 18 U.S.C. § 2332(b); (2) attempting to murder U.S. nationals outside the United States, in violation of 18 U.S.C. § 2332(b); (3) conspiracy to murder U.S. military servicemembers, in violation of 18 U.S.C. §§ 1114 and 1117; (4) attempting to murder U.S. military servicemembers, in violation of 18 U.S.C. § 1114; (5) attempting to provide and providing material support to terrorists, in violation of 18 U.S.C. § 2339A; (6) conspiracy to murder and maim in a foreign country, in violation of 18 U.S.C. § 956; (7) illegal transmission of national defense information believing that it could be used to the injury of the United States, in violation of 18 U.S.C. § 793(d); and (8) illegal delivery of national defense information, in violation of 18 U.S.C. § 794(a).

#### 1.  *Melzer's 09A Membership and Military Enlistment*

09A is a white supremacist, neo-Nazi, satanist and Jihadist group that "advocates extreme violence, including murder, as a means…to accelerate the demise of liberal democracies and Western civilization." Government Sentencing Submission at 1, 4. The group admires Nazi

Germany and calls for the elimination of Jews, people of color, and rape as a means of promoting the white race. *Id.*

Melzer had expressed support for extremist ideologies and white supremacy as early as 2013, when he purchased Doc Martin brand boots because he believed they were worn by Nazis and discussed that he would use the boots to "stomp" a "[n-word]." *Id.* at 7. Melzer's affiliation with 09A dated back to at least to 2016, the timing of his first "insight role" for the organization, which involved gang- and narcotics-related activities. *Id.* at 6. During this time, Melzer claimed to have robbed stores, sold drugs, and participated in a drug deal gone wrong where Melzer admitted to shooting a rival drug dealer, causing the victim to lose full use of the arm (the "Shooting"). *Id.*at 6-7; PSR ¶¶ 21-24.

Melzer's enlistment was motivated by his goal of furthering 09A's violent objectives. *Id.* at 6. Melzer enlisted in the Army in December 2018 and did not begin active duty until June 4, 2019. *Id.* at 19. By February 2019, Melzer was discussing 09A on the online chat application Discord. *Id.* at 11. In May 2019, Melzer stated in an 09A Discord channel that he would soon be in the U.S. military full time. *Id.* at 14. He had a direct conversation in which he acknowledged that the Uniform Code of Military Justice clearly banned O9A and explained that he would hide his affiliations from the military. *Id.* In December of 2019, when discussing the so-called race war 09A's adherents predicted, Melzer told another person "I'm in the Army specifically for this. I literally…join[ed] for this exact reason." *Id.* at 22.

### 2. *The Charged Conduct*

In April 2020, Melzer was transferred to a new platoon set to deploy on a mission to guard the Military Base, a sensitive military facility in Turkey. *Id.* at 2. As Melzer learned about the deployment, he passed sensitive and classified information regarding the precise location of the

Military Base, the number of soldiers who would be guarding the installation, and how they would be armed. *Id.* During this time, Melzer was also collecting Jihadist propaganda materials including videos depicting violent attacks on Western forces and the execution of captive soldiers. *Id.* at 31.

On May 17, 2020, Melzer informed a co-conspirator ("CC-1") about the deployment, which was scheduled for May 28, 2020. *Id.* at 34. CC-1 had inquired about the status of the deployment so he could update another co-conspirator ("CC-2"), claiming that CC-2 "needs to know, he has plans." *Id.* CC-1 identified CC-2 as a Turkish individual joining Al Qaeda. *Id*.

On May 20, 2020, Melzer received a classified briefing relating to the deployment, including the sensitive purpose of the Military Base and its strategic importance to U.S. national security, and specific attack scenarios, including attacks involving jihadist forces. *Id*. at 37. On May 23, 2020, CC-1 forwarded Melzer's communications about the plan to a group with 18 members, including Melzer and an FBI confidential source ("CS"). *Id*. Melzer and the group members discussed the possibility of a jihadist attack on the his platoon's deployment, and Melzer mentioned that he "[u]sed to be cool with a couple IS [ISIS] members who lived in France." *Id*. Melzer wrote that he was "risking his literal free life" by disclosing information regarding his unit's deployment and was "expecting results" that his "life would be absolutely meaningless in the amount of shit [the attack] would cause"; attack would cause a new war and result in "mass casualty."[1] *Id*. On May 24, Melzer exchanged electronic communications with CC-1 in which Melzer acknowledged he could be killed during attack, saying "I would've died successfully…another 10-year war in middle east would definitely leave a mark…" *Id.* at 38.

---

[1] Melzer described the proposed attack as "mascal," which another participant in the exchange explained meant "mass casualty." *Id.*

On May 25, 2020, Melzer confirmed the coordinates of the Military Base with CC-1 and provided detailed national defense information he had received in the confidential briefings, including the number of soldiers and weapons expected at the base. *Id.* Later that day, CC-1 started a smaller, invite-only chat group on Telegram and invited vetted participants, including Melzer, a third co-conspirator ("CC-3"), and the CS. *Id*. Melzer explained that he "need[s] some Turkish people to cause some shit to put it lightly," and, when asked how many "jihadis" he wished to recruit, Melzer said "squad sized." *Id.* at 39.

On or about May 26, 2020, the CS exposed the scheme to law enforcement. *Id at 42.* The scheduled May 28 deployment was postponed as authorities investigated Melzer, and on May 30, he was taken into custody. *Id.* at 44.

### B.  Guilty Plea

Trial was scheduled to commence on July 6, 2022.  Melzer faced a potential maximum sentence of life imprisonment upon conviction at trial.  Less than two weeks before trial, on June 24, 2022, the Government allowed Melzer to plead guilty pursuant to a plea agreement (the "Plea Agreement") to three counts of the Indictment: (1) attempting to murder U.S. military servicemembers, in violation of 18 U.S.C. § 1114, which carries a maximum sentence of 20 years in prison; (2) attempting to provide and providing material support to terrorists, in violation of 18 U.S.C. § 2339A, which carries a maximum sentence of 15 years in prison; and (3) illegally transmitting national defense information believing that it could be used to the injury of the United States, in violation of 18 U.S.C. § 793(d), which carries a maximum sentence of 10 years in prison.  (PSR ¶ 11).  As a result of Melzer's guilty plea, he faced a combined statutory maximum sentence of 45 years' imprisonment.  (PSR ¶¶ 12, 122-123). The Plea Agreement accordingly set

forth that Melzer's stipulated Sentencing Guidelines range was the statutory maximum of 540 months. Plea Agreement at 4.

Melzer's Plea Agreement includes the following waivers:

The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence… [I]t is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. … It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under 28 U.S.C. § 2255 and/or § 2241, of any sentence at or below the Stipulated Guidelines Sentence of 540 months' imprisonment.

Plea Agreement at 5-6.

Before accepting Melzer's guilty plea, the Court conducted a thorough colloquy with both parties, and Melzer himself. Defense counsel specifically affirmed that Melzer was of sound mind to enter his plea and Melzer affirmed that he was satisfied with his lawyer's representation. Plea Transcript at 5-6. Upon finding Melzer competent to enter a plea of guilty, *id.* at 6, the Court advised Melzer of his constitutional rights, including his right to plead not guilty, and his right to a speedy and public trial if he were to plead not guilty. *Id.* at 7-9. The Court asked and Melzer confirmed that he understood each and every one of those rights. *Id.* at 10. The Court directed the Government to state the elements of each offense provided in the Plea Agreement and Melzer confirmed he understood each offense. *Id.* at 10-13. The Court then explained the Sentencing Guidelines and advised that the statutory maximum of all three counts was 45 years, and Melzer confirmed he understood. *Id.* at 15-16. The Court also advised Melzer that he would have the opportunity to review the Pre-Sentence Report ("PSR") prior to sentencing and challenge facts contained in the PSR. *Id.* at 17. Melzer confirmed that he had read the Plea Agreement with his

lawyers and understood it. *Id* at 19. The Court then explained that the Plea Agreement was binding on the parties, and that the Court would retain discretion in imposing a sentence:

> THE COURT: You should know that agreement is binding on you and it's binding on the government, but it's not binding on me. I say that because I have my own obligation to determine what the correct guidelines range and what the appropriate sentence is in your case... I will not let you withdraw your plea, even if the range that I determine is higher than the one that you've agreed to with the United States, understanding in all circumstances that the total sentence cannot exceed the statutory maximum. Do you understand that?

> THE DEFENDANT: Yes, Judge.

Plea Transcript at 20.

The Court explicitly reviewed the waiver of rights to appeal set forth in the Plea Agreement, namely that Melzer agreed not to file a direct appeal or bring a collateral challenge, including but not limited to 28 U.S.C. § 2255 or § 2241, of any sentence at or below the stipulated Guideline sentence of 540 months imprisonment. *Id.* at 21. Melzer confirmed he understood that he was waiving his rights to appeal or challenge his conviction pursuant to the Plea Agreement. *Id*. at 22.

Following Melzer's allocution, the Court accepted his guilty plea, finding that "Mr. Melzer is fully competent and capable of entering an informed plea, that Mr. Melzer is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses." *Id.* at 29.

### C. **Sentencing**

Melzer was sentenced on March 3, 2023. Melzer was present with counsel. The defense sought and obtained certain modifications to the PSR, with the Government's agreement. Sentencing Transcript at 6. The Court asked Melzer if he had the opportunity to review the modified PSR and whether he had any "factual objections," to which Melzer responded that he

had reviewed it and that he had no factual objections. *Id.* at 6. The Court reviewed the counts and calculated the applicable Guidelines consistent with the Plea Agreement and the PSR, finding the Guidelines range to be the statutory maximum sentence of 540 months. *Id.* at 9. Counsel was given the opportunity to object and neither party had objections. *Id.* at 8-9.

Prior to the imposition of sentence, Melzer addressed the Court directly, during which he admitted to and apologized for the offense conduct. *Id.* at 17. Defense counsel urged the Court to consider mitigating factors, including the fact that "no one was harmed," and Melzer's age and difficult upbringing. *Id.* at 10-16. The defense sought a 15-year sentence to be followed by 10 years' supervised release. *Id.* at 16. The Court also heard from the Government and two of Melzer's intended victims, who had been a part of Melzer's own Army unit at the time of his offense.

The Court carefully considered the sentencing factors under 18 U.S.C 3553(a). *Id.* at 45-55. It individually reviewed each factor, acknowledging Melzer's youth, struggles with addiction, his sexual orientation, and his alcoholic mother.  However, the Court concluded that the extreme nature of the defendant's crimes, the need for deterrence, and the need to promote respect for the law outweighed any mitigating factors. The Court imposed a sentence of 540 months' imprisonment, consistent with the stipulated Guidelines contained in the Plea Agreement and reflecting the statutory maximum sentence for the three counts of conviction.  *Id* at 57.

### D. Melzer's Appeal

Melzer appealed his sentence on the ground that the Court gave impermissible weight to his religious beliefs.  The Second Circuit affirmed the sentence imposed by the District Court on November 12, 2024, holding that District Court did not sentence Melzer based on any constitutionally protected beliefs.  The Circuit noted that it was clear from the record that the District Court's reference to O9A's ideology, including its opposition to Judeo-Christian values,

8

was properly made in connection with the Court's consideration of defendant's motive for the offense conduct. *United States v. Melzer*, No. 23 Cr. 6247, 2024 WL 4778188 (2d Cir. Nov. 14, 2024).

### E. The Petition

On or about January 5, 2026,[2] Melzer filed this motion pursuant to 28 U.S.C. § 2255 seeking a reduced sentence, alleging that the District Court abused its discretion in connection with the defendant's sentencing by failing to consider mitigating factors required by 18 U.S.C. § 3553. In particular, Melzer argues that the Court failed to give adequate weight to: (1) his age at the time of the offense, Pet. at 1-2, 5; (2) his "character of service" as an infantryman in the Army, *id.* at 2, 5; (3) his drug and alcohol addictions, *id.* at 2-3, 5; and (4) the nature and circumstances of his offenses and his history and characteristics, *id.* at 3, 5. Melzer further alleges that he "was subjected to a clearly unconstitutional sentence well within the meaning of a sentence disparity" and his sentence is thus "unconstitutional in light of the Eighth Amendment." *Id.* at 3, 6. He additionally claims, without providing support, that he has "maintained a completely clear record" with the Federal Bureau of Prisons Intelligence and Counterterrorism branch since his conviction and has abandoned ties with 09A. *Id.* at 7. Melzer argues by extension that his alleged compliance with his conditions of confinement for the past few years demonstrates that his mentality has changed, and asks the Court to re-sentence him for "this extraordinary and compelling reason." *Id.* Lastly, Melzer alleges that he is entitled to re-sentencing due to unspecified prosecutorial misconduct and wrongful admission of hearsay evidence, that is, the Shooting described in his PSR. *Id.* at 4.

---

[2] The Petition was docketed in this case on or about January 5, 2026 (*see* Dkt. 179) but appears to have been completed and signed by Melzer on or about October 25, 2025. *See* Pet. at 9.

9

**ARGUMENT**

Melzer's Petition is explicitly barred by his knowing, intelligent, and voluntary waiver in his Plea Agreement. Melzer provides no reason why the waiver should not be enforced. Regardless, Melzer's sentence of 540 months as recommended by the Sentencing Guidelines was procedurally and substantively reasonable. The Petition should be denied in its entirety.

### A. Melzer's § 2255 Motion is Barred by the Waiver in His Plea Agreement

#### 1. *Applicable Law*

It is well-settled that a defendant's knowing and voluntary waiver of his right to appeal or collaterally attack a sentence within an agreed upon guideline range is presumptively enforceable. *See United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010) citing *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). The Second Circuit has articulated only four grounds upon which such a waiver may be deemed unenforceable: (1) where the "waiver was not made knowingly, voluntarily, and competently;" (2) where the sentence was "based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases;" (3) where the government breached the agreement containing the waiver; and (4) where the district court "failed to enunciate any rationale for the defendant's sentence." *Arevalo* 628 F.3d at 98. Waivers of constitutional rights are generally considered knowing and intelligent when done with sufficient awareness of the relevant circumstances and likely consequences. *See Brady v. United States*, 397 U.S. 742, 743 (1970).

#### 2. *Discussion*

Melzer fails to allege any reason why the waiver contained in his Plea Agreement should not be enforced. Nor can he, because any such argument is foreclosed by the record.

10

Melzer's waiver of his right to collaterally attack his sentence was made knowingly, intelligently, and voluntarily. Melzer's plea allocution thoroughly confirms this essential fact. Melzer was represented by competent counsel for the entirety of his case, and he does not contend otherwise. At the change of plea hearing, the Court specifically asked Melzer if he was satisfied with his legal counsel and if he understood the consequences of the waiver. Plea Transcript at 20. Melzer confirmed both prior to entering his guilty plea. *Id.* at 22. Of course, Melzer gained a substantial benefit from entering into the Plea Agreement: his statutory maximum sentence was limited to 45 years' imprisonment, rather than the risk of life imprisonment he would have faced if convicted at trial. At his plea hearing and sentencing hearing, both his attorney and the District Court ensured Melzer understood the nature of his charges and the effects of pleading guilty under the Plea Agreement. At the sentencing hearing, the Court provided counsel multiple opportunities to object to the Sentencing Guidelines and defense counsel voiced none. The Court heard from defense counsel who competently argued that the Court should consider mitigating factors. At every step of the process, Melzer was adequately represented by counsel, and made knowing, intelligent, and voluntary choices.

The Second Circuit has already determined that Melzer's sentence was not based on any impermissible considerations or protected characteristics, and this finding is clearly supported by the District Court's thorough justification for its sentence at the sentencing hearing. *United States v. Melzer*, No. 23 Cr. 6247, 2024 WL 4778188 (2d Cir. Nov. 14, 2024). The same determination precludes any basis to find Melzer's waiver void due to any failure by the court to enunciate any rationale for the sentence. Nor did any breach of the Plea Agreement occur.

11

Pursuant to the signed Plea Agreement, Melzer knowingly, intelligently and voluntarily waived his right to bring the instant Petition. The Petition can—and should—be denied on that ground alone.

## B. Melzer's Sentence Was Procedurally And Substantively Reasonable

Irrespective of his waiver, Melzer's Petition also fails on its merits because his sentence was both procedurally and substantively reasonable. The record clearly demonstrates that Melzer's sentence was imposed with careful reasoning and attention to mitigating factors.  The Court in fact explained that it considered the same factors Melzer now cites – such as Melzer's age, service, and addictions – but ultimately found that a sentence of 540 months was nonetheless warranted by the extreme nature of the offense, the need to promote deterrence and promote respect for the law. A sentence of 540 months for the attempted murder of forty U.S. service members, providing material support to terrorists, and sharing national defense information was proper and justified in Melzer's case. When imposing that sentence, the Court relied upon uncontested facts adopted from the PSR, without objection from Melzer. His belated objection to the Court's consideration of "inadmissible hearsay" in the PSR, and his unsupported and vague allegations of prosecutorial misconduct, are similarly without merit.

### 1. *Applicable Law*

18 U.S.C. § 3553(a) provides: "The court, in determining the particular sentence to be imposed, shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,
>> (B) to afford adequate deterrence to criminal conduct,
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed…correctional treatment …

12

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

…

(5) any pertinent policy statement…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

The Supreme Court has explained that a sentencing judge "should begin all sentencing proceedings by correctly calculating the applicable [Sentencing] Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007) citing *Rita v. United States*, 551 U.S. 338, 347-48 (2007). Furthermore, sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues. *United States v. Cavera*, 550 F.3d 180, 194 (2d Cir. 2008).

Regardless of whether the sentence imposed is inside or outside the Guidelines range, it will be reviewed under an abuse-of-discretion standard. *Gall* 552 U.S. at 56; *United States v. Kourani*, 6 F.4th 345, 456 (2d Cir. 2021). A sentence is procedurally reasonable where the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *Kourani* 6 F.4th at 456.

In providing a proper explanation for the sentence, district courts do not need to follow a rigid formulation and the "appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007) Similarly, a district court is not obligated to discuss each statutory sentencing factor on the record

13

or even to note that those factors were considered before imposing sentence. *United States v. Pugh*, 945 F.3d 9, 25 (2d Cir. 2019).

When considering the seriousness of the offense, respect for the law, just punishment for the offense, and to afford adequate deterrence to criminal conduct, crimes related to terrorism represent a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal. *United States v. Saleh*, 946 F.3d 97, 100 (2d Cir. 2019). Congress and the United States Sentencing Commission "plainly intended for the punishment of crimes of terrorism to be significantly enhanced without regard to whether, due to events beyond the defendant's control, the defendant's conduct failed to achieve its intended deadly consequences." *Id* at 113. In determining what constitutes a "sufficient" sentence for a terrorist defendant whose conduct did not result in death or physical injury, a sentence at the high end of the applicable range may plainly be reasonable if supported by the balance of the Section 3553(a) factors. *Id*.

A district court's substantive determination at sentencing will be set aside only in exceptional cases, where the district court's decision cannot be located within the range of permissible decisions, or when the sentence constitutes a manifest injustice or shocks the conscience. *Kourani* 6 F.4th at 456-457*; see also United States v. Ceasar*, 10 F.4th 66, 82 (2d Cir. 2021) (finding a sentence for terrorism offenses to be substantively unreasonable because the "sentence was shockingly low").

### 2. *Discussion*

#### i. *Melzer's Sentence Was Procedurally Reasonable*

To the extent Melzer asserts his sentence was procedurally unreasonable, for example, through his contention that the District Court failed to consider information under the § 3553(a)

factors, or his claim that the Shooting described in the PSR could not be considered because it was

"hearsay," Melzer's Petition is meritless.  Pet. at 2-5.  It is readily apparent from the record that

there was no procedural error at sentencing. Melzer never objected to the Court's calculation of

the Sentencing Guidelines, nor does he now. The District Court provided extensive justification

for the sentence imposed, and Melzer's sentence is strongly supported by the facts of his

extraordinary crimes.

### 1.  The District Court Gave Proper Consideration and Weight to the Section 3553(a) Factors

The District Court's consideration of the nature and circumstances of the offense and

Melzer's history and characteristics was proper. Indeed, the Court expressly considered the same

information that Melzer now cites in his Petition as mitigating factors:

> "I've given serious consideration to the guidelines and the policy statements. In this case, I believe that a guideline sentence is appropriate. I reached that conclusion after having considered all of the 3553(a) factors and purposes of sentencing. I've considered all of the arguments presented by the defendant in support of a downward variance here. First, I accept the argument that Mr. Melzer's youth at the time of his offense could be considered to be a mitigating factor. I've weighed that in my sentence. I view it as mitigating, but only to a degree. I observe that Mr. Melzer was not a minor at the time of his offense. Rather, he was a 21-year-old soldier, and Mr. Melzer's crime was exceptionally serious. Second, while I appreciate that Mr. Melzer had a challenging childhood, and struggles with his identity as a gay man, at best, those facts explain -- they do not begin to justify -- his decision to commit this set of crimes. Third, I appreciate that it is fortunate that this attack did not come to fruition. But as I said earlier, that was not for a lack of trying. Mr. Melzer was engaged in trying to kill his fellow servicemen. And we've heard from the victims and the United States about the fact that there is still harm from his crime.

Sentencing Transcript at 54-55.

A district court is not required to follow any rigid formulation in its explanation, nor is it

obligated to discuss each statutory sentencing factor on the record or even to note that those factors

were considered before imposing sentence. *See Rita* 551 U.S. at 356. The Court here nevertheless

15

did so. *See* Sentencing Transcript at 44-58. Melzer's history and characteristics, specifically his youth, drug and alcohol addictions, trauma, and military history were explicitly acknowledged and weighed by the Court in its sentencing determination. *Id.* at 48-50. The Court rightfully found that the degree of mitigation provided by Melzer's hardships and immaturity was necessarily limited by his long-term commitment to violence and the extreme betrayal of his duty as a soldier. Melzer's claims that his youth, difficult childhood, and other personal characteristics were not considered at the time of sentencing are directly refuted by the record. The District Court also plainly considered Melzer's arguments that his offenses did not cause harm, because the attack he planned did not come to fruition. *Id*. at 54-55. In each respect, Melzer's Petition fails to identify any error or oversight by the District Court, let alone one that would rise to the level of unreasonableness.

In addition, the fact of the Shooting was properly before the District Court and did not reflect any procedural error. Melzer could have objected to its inclusion in the PSR but made a strategic choice not to do so. Indeed, the record reflects that Melzer and his counsel chose to raise objections to the PSR, but intentionally did not raise any objections relating to "hearsay" about the Shooting or the fact of the Shooting itself.[3] That strategic choice benefited Melzer, because such an objection would have risked a *Fatico* hearing, where the District Court could have found the facts of the Shooting based on testimony from witnesses and the Shooting victim, among other things.  A defendant, such as Melzer, who fails to challenge facts in the Presentence Report at time of sentencing waives the right to contest them on appeal. *United States v. Perez Dominguez,* 393 F. App'x 773 (2d Cir. 2010). Here, the Presentence Report reflected that Melzer "does not dispute

---

[3] Of course, Melzer's claim fails for yet another reason: the Second Circuit has consistently upheld the admissibility of hearsay evidence in sentencing when corroborated by other evidence or when its reliability is otherwise established. *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978).

that he was involved" in the Shooting. PSR at 39. For this reason, Melzer's claims regarding "hearsay evidence" and consideration of the Shooting should be denied.

### ii. Melzer's Sentence Was Substantively Reasonable

Melzer's claim that his sentence is "atypically severe," Pet. at 6, has no legal basis. The defendant's treasonous, murderous conduct—an active-duty U.S. soldier attempting the unthinkable: the mass murder of his platoonmates at the hands of terrorists while stationed overseas—marks one of the most stunning betrayals from within the ranks of the U.S. military ever to be prosecuted in a federal court. Melzer was aware of the statutory maximum and applicable Guidelines calculation when he pleaded guilty. As the Court found, "Melzer betrayed his comrades in arms; he tried to have them murdered; provided assistance to people he believed are terrorists; and he shared national defense information to do so. This is a very serious crime, and the sentence must be substantial to be just." Sentencing Tr. 50-51.

As an initial matter, while a "within-Guidelines sentence is not presumptively reasonable," a Guidelines sentence "will fall comfortably within the broad range of sentences that would be reasonable" in "the overwhelming majority of cases." *United States v. Pollok*, 139 F.4th 126, 145 (2d Cir. 2025) (quotation marks omitted). This case is no exception. Indeed, courts have imposed even greater sentences of life imprisonment in analogous thwarted terrorist attack cases. *See* Gov. Sentencing Submission at 57; *United States v. Jabarah*, 292 F. App'x 140 (2d Cir. 2008) (court affirmed a life sentence for an al Qaeda operative who conspired to bomb U.S. embassies in Singapore and the Philippines); *United States* v. *Kassir*, 04 Cr. 356 (JFK) (S.D.N.Y. Sept. 15, 2009) (court imposed a life sentence for al Qaeda supporter who attempted to establish a jihad training camp in the United States and disseminated bomb-making manuals).

17

Melzer's citations fail to support his Petition. Each case either upheld a harsher sentence or is clearly distinguishable on its facts. Pet. at 6. For example, *United States v. Moreno,* No. 3:94-CR-00223 (AWT), 2025 WL 641291 (D. Conn. Feb. 27, 2025) involved a gang shooting where the defendant was sentenced to life. The court held that the gravity of the offense, the defendant's violent history, the principles of deterrence, and need for public safety outweighed the defendant's arguments for leniency.  While in *United States v. Kaziu*, 768 F.Supp.3d 477 (E.D.N.Y., 2025), an individual who traveled to Egypt to "wage jihad" received a two-year sentence reduction (from 27 to 25 years), Melzer's crime was significantly more severe.  Unlike *Kaziu*, Melzer pleaded guilty to attempting to kill American soldiers and disseminating national defense information, and Melzer's crimes included numerous aggravating factors, including abusing his military position, access, and training.

Meanwhile, in *United States v. Pugh*, 945 F.3d 9 (2d Cir. 2019), where a marine veteran was given the maximum sentence of 420 months for attempting to join ISIS, the court found the district court insufficiently articulated its reasoning where it only described the general evidence of the crimes. "The vast majority of the court's comments on the record relate to Pugh's guilt rather than to an appropriate sentence. Those comments do not provide a basis for understanding why the particular sentence was imposed, much less for understanding why a sentence at the top of the Sentencing Guideline range, which was also the statutory maximum, was imposed." *Id*. at 27. This simply cannot be said for Melzer's case, where the District Court meticulously reviewed each factor and explained how it weighed in his decision to impose the maximum sentence.

None of the other cases cited by Melzer address remotely similar factual or legal issues and should thus be disregarded by the Court.  In *Hernandez v. United State*s, No. 15 Civ. 10093, 2025 WL 1040635 (S.D.N.Y. Apr. 8, 2025), the defendant was sentenced to 396 months for conspiracy

18

to commit murder in aid of racketeering, and the court denied the defendant's motion for a reduced sentence pursuant to §§ 3582(c)(2) and (c)(1)(A). Similarly, *United States v. Bruno,* No. 14-CR-556 (WFK), 2016 WL 2755912 (E.D.N.Y. May 11, 2016) involved drug conspiracy and racketeering charges and the defendant was sentenced to 252 months' imprisonment. *United States v. Hasbajrami*, 945 F.3d 641, 645 (2d Cir. 2019) is also inapposite.  *Hasbajrami* involved a defendant attempting to provide assistance to terrorists, but the legal issue involved admissibility of evidence under the Foreign Intelligence Surveillance Act of 1978.  Again, none of these cases stand for the proposition that Melzer's Guidelines sentence was substantively unreasonable.

Lastly, Melzer claims that he is entitled to resentencing due to prosecutorial misconduct, without elaboration. Melzer Pet. at 3. While a defendant's conviction may be vacated if prosecutorial misconduct caused substantial prejudice implicating the right to due process, *United States v. Fell*, 531 F.3d 197, 209 (2d Cir. 2008), Melzer makes no such showing. Melzer provides only vague and general allegations of misconduct. He does not identify any specific conduct by the prosecution that would amount to misconduct, nor does he explain how his sentencing was wrongfully influenced by any purported misconduct. This claim should be flatly rejected.

Simply put, Melzer's sentence was substantively reasonable. It is indisputably within the range of permissible decisions, and does not remotely shock the conscience or constitute a manifest injustice. *Kourani* 6 F.4th at 457; *Stewart* 590 F.3d at 185. To the contrary, the Court's sentence was fully justified. The defendant sought to murder his fellow servicemembers in a devastating attack on a highly sensitive military installation overseas.  Daily, the defendant lived and trained alongside these young men. Together, they swore an oath of loyalty to this country, they were tasked with the mission of protecting each other and protecting the United States, and they drilled to prepare for that mission.  But instead, the defendant was secretly plotting his own mission: to

19

kill the very servicemembers in his midst. Steeped in racist, jihadist, and nihilist ideologies, his broader goal was to start a war, in which many more Americans and others would die. In seeking to have his fellow soldiers maimed and murdered, the defendant turned his back on his country and his unit while aligning himself with and empowering our nation's sworn enemies. While any terrorism offense is inherently serious, consideration of the defendant's background, the context in which he committed his offenses, and the specific details of those offenses underscored the exceptionally grave and terrifying nature of his conduct and necessitated a Guidelines sentence reflecting the statutory maximum.[4]

## CONCLUSION

Melzer's waiver of his right to collaterally attack his conviction and sentence pursuant to his Plea Agreement bars this motion. Even if it did not, the Court carefully followed the law and

---

[4] Melzer does not seek compassionate release, though he argues that his lack of association with terrorist organizations since his 2023 conviction demonstrates an "extraordinary and compelling" reason for the Court to reduce his sentence. Pet. at 7. Even if Melzer were to seek compassionate release, the grounds he cites would not support it. *See Mumuni* 946 F.3d at 112 ("No substantially mitigating weight can be borne here by the fact that [defendant] did what was plainly required of him—that is, behaving himself in prison.").

imposed a thoroughly considered Guidelines sentence.  Melzer's Petition should be denied in its

entirety.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: /s/
Sam Adelsberg
Matthew J.C. Hellman
Kimberly J. Ravener
Assistant United States Attorneys
(212) 637-2494 / 2278 / 2358

21